## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHOON'S DESIGN LLC,

                    Plaintiff,

        v.

AYSUM LIFE *et al.*,

                    Defendants.

Case No. 2:24-cv-13321-FKB-APP

Hon. F. Kay Behm
Mag. Anthony P. Patti

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CHOON'S DESIGN'S MOTION FOR DEFAULT JUDGMENT (ECF No. 53)

This is a patent and trademark infringement case in which Plaintiff Choon's Design LLC ("Choon's Design") alleges that dozens of online sellers from China, identified by their ecommerce store names in Exhibit 1 to the Complaint (ECF No. 1-2) (collectively, "Defendants"), are flooding the online marketplace with rubber band crafting kits that infringe Choon's Design's patents and Rainbow Loom® brand.

Presently before the Court is Choon's Design's motion for default judgment against fourteen Defendants whose defaults were previously entered by the Clerk

(collectively, "Defaulted Defendants"[1]), in which Choon's Design seeks monetary damages and injunctive relief on its claims (the "Motion"). ECF No. 53. None of the Defaulted Defendants, who have not appeared and were thus defaulted for failure to plead or otherwise defend, has filed a response in opposition to Choon's Design's Motion. Pursuant to Local Rule 7.1(f)(2), the Court will decide Choon's Design's Motion without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons stated in this opinion and order, the Court **GRANTS IN PART** and **DENIES IN PART** Choon's Design's Motion for default judgment (ECF No. 53).

## I.    PROCEDURAL HISTORY

Choon's Design filed this case on December 12, 2024, alleging that Defendants infringe Choon's Design's patents and Rainbow Loom® brand in connection with online sales of rubber band crafting kits. ECF No. 1. Defendants, who Choon's Design believes are individuals and businesses from China, comprise dozens of online sellers identified by their ecommerce store names in Exhibit 1 to the Complaint. ECF No. 1-2.

On April 14, 2025, the Court issued an opinion and order granting Choon's Design's ex parte motion for a temporary restraining order, along with Choon's

---

[1] The fourteen Defaulted Defendants are: (1) FXHMHMJ; (2) Grace-Store; (3) HDirect; (4) Hismo; (5) LeanKing; (6) Lin Yu Store; (7) Migfun Direct; (8) Pending Yunhe Trading; (9) Putian Buliu Trading Co., Ltd.; (10) SanHai Bottle Industry; (11) SanmeiZhang; (12) Yi Tong LLC; (13) Yozaas-Shop; and (14) Zhumadian Lunzheng Trading Co., Ltd.

Design's ex parte motions to temporarily seal and for expedited discovery and alternative service of process, all of which Choon's Design filed simultaneously with the Complaint (the "Ex Parte Order"). ECF No. 16. The Court authorized Choon's Design to obtain expedited third-party discovery from Amazon to learn the email addresses that Amazon uses to communicate with Defendants, and allowed Choon's Design to serve Defendants by sending process and notice of further proceedings in this case to the email addresses provided by Amazon. *Id.*, PageID.653-655. On April 24, 2024, pursuant to the Ex Parte Order, and prior to subsequent proceedings, Choon's Design effected service of process on all Defendants by emailing summons and a copy of the Complaint, as well as the Ex Parte Order, to their email addresses as provided by Amazon. ECF Nos. 23, 47.

On April 28, 2025, the Court granted Choon's Design's motion to extend the temporary restraining order by fourteen days. ECF No. 21. The Court issued similar orders extending the temporary restraining order on May 8, 2025 and May 27, 2025. ECF Nos. 27, 37. On June 9, 2025, the Court issued an opinion and order granting Choon's Design's motion for a preliminary injunction, in which the Court granted the same injunctive relief as the Court granted in the temporary restraining order. ECF No. 44. By that time, two now-terminated Defendants, who turned out to be the only responding Defendants in this case, had appeared through counsel and answered the Complaint. ECF Nos. 29, 39.

Only the Defaulted Defendants remain as defendants in this case. Despite proper service of process and notice of the proceedings in this case, the Defaulted Defendants were part of the majority of non-responding Defendants who never made formal appearances, answered or otherwise responded to the Complaint, or filed responses in opposition to Choon's Design's motions. Nonetheless, over the course of the proceedings, Choon's Design was able to reach settlement agreements with all other non-responding Defendants, and, most recently, the two responding Defendants. Pursuant to the settlement agreements, Choon's Design voluntarily dismissed all claims against them, and they were terminated as defendants. ECF Nos. 26, 32, 36, 40, 46, 48, 52.

On July 31, 2025, on Choon's Design's request for a clerk's entry of default, the Clerk entered a default against the Defaulted Defendants for failure to plead or otherwise defend. ECF No. 50. On October 10, 2025, Choon's Design filed its present Motion for default judgment against the Defaulted Defendants, seeking monetary damages and injunctive relief on its claims. ECF No. 53.

## II.  BACKGROUND

This case involves do-it-yourself rubber band crafting kits for making uniquely colored bracelets, necklaces, and other trinkets from colorful rubber bands. As distinguished from kits that only provide raw materials, the kits come with tools to help users of all skill levels manipulate the rubber bands to form a series of links.

4

## A.     Choon's Design's Rainbow Loom Kits

Plaintiff Choon's Design is a Michigan company formed around rubber band crafting kits sold under the Rainbow Loom® brand (the "Rainbow Loom kits"). ECF No. 1, PageID.4, 5. In addition to rubber bands, the Rainbow Loom kits include looms for supporting the rubber bands, hooks for manipulating the rubber bands, and clips for securing the rubber bands on the ends of the completed series of links. *Id.*, PageID.6. Both as part of the Rainbow Loom kits and as a separate Rainbow Loom accessory, Choon's Design sells so-called "mini-looms," which are handheld parts with two spaced apart members particularly suitable for making rubber band bracelets. *Id.*

Soon after their introduction in late 2011, the Rainbow Loom kits became a "smash hit" for Choon's Design and its founder Cheong Choon Ng, an automotive engineer who came up with the idea after making rubber band bracelets with his two young daughters. *Id.*, PageID.5-6; ECF No. 1-4, PageID.54. By 2013, the Rainbow Loom kits were the "summer obsession" and "flying off shelves" at specialty toy and craft stores. *Id.* In 2014, Choon's Design won the Toy Industry Association's "Toy of the Year" award, as well as the awards for "Activity Toy of the Year," "Girl Toy of the Year," and "Specialty Toy of the Year." *Id.*, PageID.6. Over the course of a decade, Choon's Design has spent millions of dollars developing the Rainbow

Loom® brand, and has sold multiple millions of the Rainbow Loom kits in the United States. *Id.*; ECF No. 7, PageID.209.

### B.    Choon's Design's Patents

Choon's Design owns a number of patents on the Rainbow Loom kits. In this case, Choon's Design asserts two patents filed in the United States Patent and Trademark Office (the "USPTO") in the mid-2010s timeframe: (1) U.S. Patent No. 8,899,631 (the "'631 Patent"); and (2) U.S. Patent No. 9,750,317 (the "'317 Patent"). Both the '631 Patent and the '317 Patent are directed to a kit that includes a mini-loom, described in the patents as a "template," and clips known in the marketplace as "C-Clips," referring to their C-shaped design.[2]

As shown in Figure 1 of the '631 Patent, reproduced below, the kit (10) includes elastic bands (18), a template (12 or 15), a hook (14), and clips (16). For a basic understanding of how the linking process works, Figure 9H, reproduced below, illustrates that, after placing one elastic band (18) on the template (12), the hook (14) can be used to loop another elastic band (18) through the one on the template (12).

---

[2] The '631 Patent and the '317 Patent are part of a sprawling patent family; the links between family members are complicated by both intermediate patents and priority claims to different provisional applications. At the most basic level, the '631 Patent is a continuation-in-part of the original parent patent, and the '317 Patent is a continuation-in-part of the '631 Patent. The original parent patent discloses a kit with a loom, while the '631 Patent introduces embodiments of a handheld template, and the '317 Patent builds on the '631 Patent by disclosing another embodiment.



FIG.1



8) PULL THE HOOK BACK TO MAKE A LOOP THROUGH 1st RB

FIG.9H

### 1.    '631 Patent

The '631 Patent, entitled "Brunnian Link Making Device and Kit," was filed in the USPTO on September 25, 2012 and issued on December 2, 2014. On December 11, 2024, at the conclusion of a reexamination proceeding initiated by a third party, the USPTO issued Ex Parte Reexamination Certificate No. 8,899,631 C1 (the "'631 Reexamination Certificate"). The '631 Reexamination Certificate confirms the novelty and non-obviousness of the claims of the '631 Patent, either as issued or as amended during the reexamination proceeding.

The '631 Patent discloses three embodiments of a template.[3] In its motion for a temporary restraining order, as the only discussion of the '631 Patent, Choon's

---

[3] The embodiments are respectively shown in Figures 4-6, Figures 9A-9K, and Figures 10-12. The Court notes that the written description is organized around two main embodiments, the "template 12" discussed with reference to both Figures 4-6 and Figures 9A-9K, and the "template 15" discussed with reference to Figures 10-12. However, as to the "template 12," it is apparent that the part illustrated in Figures 9A-9K is different from the part illustrated in Figures 4-6, particularly with respect to the way the pins are connected.

Design reproduces the claim language of Claim 4. ECF No. 7, PageID.205. Because Choon's Design's arguments do not refer to the disclosed embodiments, the Court will limit its discussion to the first embodiment.[4]

As shown in Figures 4-6, reproduced below, in the first embodiment, the template (12) includes two pins (28A, 28B) spaced a distance (52) apart from each other and connected by a bridge (36) that defines the distance (52) between the pins (28A, 28B). Each pin (28A, 28B) includes an upper flange (30A, 30B) and a lower base (32A, 32B) opposed about a center barrel portion (40A, 40B), and an access groove (34A, 34B) extending through the pin (28A, 28B). The bridge (36) extends between the bases (32A, 32B) of the pins (28A, 28B), and the pins (28A, 28B) are connected by the bridge (36) at the bases (32A, 32B). The barrel portions (40A, 40B) support the elastic bands (18), and the flanges (30A, 30B) and the bases (32A, 32B) extend outwardly from the barrel portions (40A, 40B) to prevent the elastic bands (18) from sliding off the pins (28A, 28B). The access grooves (34A, 34B) are disposed on outward facing sides (38A, 38B) of the template (12), and allow the hook (14) to reach into the pins (28A, 28B) behind the elastic bands (18).

---

[4] The Court notes that, in any event, the first embodiment is the only embodiment that the written description describes in detail. With respect to the remaining embodiments, the written description is generally limited to referring to the figures and naming the numbered features.





In addition to the embodiments of a template, the '631 Patent discloses one embodiment of a clip. As shown in Figures 7 and 8, reproduced below, the clip (16) is C-shaped, and includes inward facing ends (48). In association with the C-shaped design, the clip (16) defines an interior space (50) for receiving the elastic bands (18). The inward facing ends (48) are disposed on each side of an opening to the

interior space (50), and prevent the elastic bands (18) from sliding out from the interior space (50) through the opening off the clip (16).[5]



FIG.7

FIG.8

### 2.    '317 Patent

The '317 Patent, entitled "Hand Held Link Making Device and Kit," was filed in the USPTO on June 5, 2015 and issued on September 5, 2017.

The '317 Patent discloses an additional embodiment of a template. As shown in Figures 4-6, reproduced below, the template (12) includes two posts (28A, 28B) spaced a distance (30) apart from each other and supported on a base (36). Each post (28A, 28B) includes two arms (32a-b, 34a-b). The arms (32a-b, 34a-b) define an access slot (38) extending across the posts (28A, 28B). Moreover, each arm (32a-b,

---

[5] For purposes of discussion, the Court adopts the "interior space" and "opening" terminology from the claims. For reference, in connection with the clip as a whole, the written description variously uses "open space 50," "inner area 50," and "open area 50," while the claims consistently use "interior space." In connection with the inward facing ends, as implied by the lack of a reference number, "opening" appears only in the claims.

34a-b) includes an upper tab (42) and a lower tab (42) opposed about a center section (44). The center sections (44) support the elastic bands (18) across the posts (28A, 28B), and the tabs (42) hold the elastic bands (18) within the center sections (44). The access slot (38) opens to outward facing sides of the posts (28A, 28B), and allows the hook (14) to reach into the posts (28A, 28B) behind the elastic bands (18).



### 3.    Asserted Claims

In the Complaint, Choon's Design alleges that Defendants infringe Claims 4, 10, 13-15, 20, and 24 of the '631 Patent and Claims 1-3 and 7 of the '317 Patent (the "asserted claims"). As amended by the '631 Reexamination Certificate, the asserted claims of the '631 Patent include independent Claim 4 and dependent Claim 24, independent Claim 10 and dependent Claims 13-15, and independent Claim 20. The asserted claims of the '317 Patent include independent Claim 1 and dependent Claims 2, 3, and 7. Generally, all asserted claims recite a template, either alone or in combination with a clip, a hook, or elastic bands.

For purposes of its motion for a temporary restraining order, Choon's Design

focuses on Claim 4 of the '631 Patent and Claim 1 of the '317 Patent. Claim 4 of the

'631 Patent recites:

> **4**. A device for creating an item consisting of a series of links, the device comprising:
> a template including at least two pins spaced part [*sic*] from each other, each of the pins including a first end, a base end, and an access groove; and
> a bridge portion extending between the base end of each of the pins, wherein the first end includes an outwardly extending flange and each of the access grooves extend entirely through each of the pins including the first end and the base end.

'631 Patent 4:1-11; '631 Reexamination Certificate 2:5-15. Claim 1 of the '317

Patent recites:

> **1**. A kit for creating an item consisting of a series of links, the kit comprising:
> a plurality of elastic bands, wherein each of the plurality of elastic bands comprise a closed loop; and
> a template including at least two posts spaced apart from each other in a first direction, wherein each of the at least two posts includes a longitudinal channel bounded on three sides, a first tab near a top portion and a second tab near a bottom portion of the at least two posts for holding an elastic band across the at least two posts.

'317 Patent 4:2-11.

While the patents disclose different embodiments and use different

terminology, Claim 4 of the '631 Patent and Claim 1 of the '317 Patent include

similar limitations in the claim language directed to the template. As the basic claim

12

elements, the claim language of both asserted claims recites two spaced apart members that have three features. In Claim 4 of the '631 Patent, the members are "pins," and each pin includes a "first end," a "base end," and an "access groove." The claim language then adds that the first ends include flanges, and that a bridge portion extends between the base ends. In Claim 1 of the '317 Patent, the members are "posts," and each post includes a "top portion," a "bottom portion," and a "longitudinal channel." The claim language then adds that the posts include first tabs near the top portions and second tabs near the bottom portions, and that the longitudinal channels are bounded on three sides.

### C.    Choon's Design's Rainbow Loom® Brand

Choon's Design holds several registered trademarks on the Rainbow Loom® brand. In this case, Choon's Design asserts U.S. Trademark Registration No. 4,714,893 (the "'893 Registration"). As shown in the drawing of the registered RAINBOW LOOM mark, reproduced below, the '893 Registration grants Choon's Design trademark rights in the words "Rainbow Loom" displayed in gradating rainbow colors.[6]

---

[6] As described by the '893 Registration: "The mark consists of the words 'RAINBOW LOOM' with the word 'RAINBOW' above the word 'LOOM', and the colors inside the wording gradating from the center of the wording outward to the left and right from red, orange, yellow, green, teal and blue and back to teal, green, yellow, orange and red." ECF No. 1-9, PageID.115 (capitalization omitted).



Choon's Design also alleges that it has protectable "product packaging" trade dress on the Rainbow Loom kits — i.e., trademark protection in "the overall look-and-feel" of the packaging of Rainbow Loom kits (the "Rainbow Loom trade dress"). Choon's Design does not identify any trademark registrations for the Rainbow Loom trade dress, or reference any images of the packaging of Rainbow Loom kits. As best understood by the Court, Choon's Design seeks protection in the use of multiple rainbow colors on the packaging of rubber band crafting kits.

### D.   Defendants' Accused Mini-Loom Kits

Choon's Design alleges that Defendants infringe Choon's Design's patents and Rainbow Loom® brand in connection with online sales of rubber band crafting kits with handheld mini-looms (the "accused mini-loom kits" and the "accused mini-looms"). Choon's Design's infringement allegations are directed to an example accused mini-loom kit sold by one Defendant, as well as representative components of all accused mini-loom kits sold by all Defendants. As shown in Choon's Design's image of the accused mini-loom kit, reproduced below at left, and annotated image of the components, reproduced below at right, in addition to rubber bands and a hook, the accused mini-loom kits contain a mini-loom and clips. The accused mini-

loom is a Y-shaped part known as a "Y-Loom" (or "Y-Tool"), and the accused clips are "S-Clips" with an S-shaped design. ECF No. 1, PageID.13. For all accused mini-loom kits sold by all Defendants, Choon's Design alleges that all components "are like what is seen below with variations in shape, size and colors." *Id.*

 

### E.    Choon's Design's Complaint

In the Complaint, Choon's Design asserts the same claims against all Defendants. For both the '631 Patent and the '317 Patent, Choon's Design asserts claims of: (1) direct infringement under 35 U.S.C. § 271(a); (2) induced infringement under 35 U.S.C. § 271(b); and (3) contributory infringement under 35 U.S.C. § 271(c) (collectively, the "patent infringement claims"). With respect to its rights in the Rainbow Loom® brand, including but not limited to the '893 Registration for the RAINBOW LOOM mark, Choon's Design asserts claims of: (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; and

15

(2) unfair competition, trademark infringement, and trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (collectively, the "Lanham Act claims").

### F.   Choon's Design's Motion

Having obtained a clerk's entry of default under Federal Rule of Civil Procedure 55(a), Choon's Design now moves for default judgment against the Defaulted Defendants under Federal Rule of Civil Procedure 55(b)(2). In its Motion, Choon's Design requests: (1) entry of a default judgment on both its patent infringement claims and its Lanham Act claims; (2) an award of damages under Section 284 of the Patent Act, 35 U.S.C. § 284 and Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a); and (3) a permanent injunction under Section 283 of the Patent Act, 35 U.S.C. § 283 and Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a).

## III.   LEGAL STANDARDS

Federal Rule of Civil Procedure 55 governs the procedures for entering defaults and default judgments when defendants fail to defend actions that plaintiffs have properly brought against them. "The effect of a default judgment is that the 'factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 403 (6th Cir. 2022) (quoting 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 2688.1 (4th ed. 2022)) (emphasis omitted).

Rule 55 establishes a two step process for a plaintiff to obtain a default judgment against a non-responding defendant. As a prerequisite to moving for default judgment under Rule 55(b), the plaintiff must obtain a clerk's entry of default under Rule 55(a). On the plaintiff's request, the clerk must enter the defendant's default when the plaintiff shows that the defendant has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Once the defendant has been defaulted, Rule 55(b)(1) and Rule 55(b)(2) set forth alternative provisions for the plaintiff to move for entry of a default judgment by the clerk or the district court, depending on the circumstances of the case. The plaintiff may request a clerk's entry of judgment by default only when, *inter alia*, the defendant "has been defaulted for not appearing," and the plaintiff's claim "is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). "In all other cases," the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). In deciding the plaintiff's motion for default judgment, the district court "may conduct hearings or make referrals … when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.*

Before entering a default judgment, a district court must ensure that the allegations in the complaint are sufficient to establish liability on the plaintiff's claims. It is well-established that "a [default] judgment 'is unassailable on the

merits,' but only if there was a 'sufficient basis in the pleadings for the judgment entered.'" *United States v. $525,695.24, Seized from JPMorgan Chase Bank Inv. Acct. #XXXXXXX*, 869 F.3d 429, 441 (6th Cir. 2017) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "So '[e]ven after default' the court must still 'consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" *New London Tobacco Mkt.*, 44 F.4th at 410 (quoting 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 2688.1 (4th ed. 2022)). *See also Thomson v. Wooster*, 114 U.S. 104, 113 (1885) (holding that a default judgment must be entered "by the court, according to what is proper to be decreed upon the statements of the bill, assumed to be true," not "as of course according to the prayer of the bill"); *Ohio Cent. R.R. Co. v. Cent. Tr. Co. of N.Y.*, 133 U.S. 83, 91 (1890) (explaining that "although the defendant may not be allowed, on appeal, to question the want of testimony or the insufficiency or amount of the evidence, he is not precluded from contesting the sufficiency of the bill, or from insisting that the averments contained in it do not justify the decree").

Just as a default judgment does not automatically follow from an entry of default, an award of damages does not automatically follow from a default judgment. A default judgment founded on a plaintiff's well-pleaded allegations "conclusively establishes every factual predicate of a claim for relief," *Thomas v. Miller*, 489 F.3d

18

293, 299 (6th Cir. 2007), but "does not resolve issues relating to damages," *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). "'Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved.'" *Antoine*, 66 F.3d at 110 (quoting *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1026 (5th Cir. 1982)). In assessing the amount of damages, a district court must treat the evidence of record "not as the last word on damages but as evidence of damages." *New London Tobacco Mkt.*, 44 F.4th at 408. *See also Antoine*, 66 F.3d at 110 (explaining that "affidavits setting out the amount of damages claimed by each plaintiff" were "not conclusive"); *New London Tobacco Mkt.*, 44 F.4th at 403 (explaining that plaintiff's allegation that contractual fees were continuing to accrue was "an allegation about damages" and holding that district court therefore "erred by accepting it as true").

## IV.   JURISDICTION

Before determining whether to enter a default judgment, the Court will address the issue of jurisdiction. "It is well-established that the federal courts are under an independent obligation to examine their own jurisdiction." *Kusens v. Pascal Co.*, 448 F.3d 349, 359 (6th Cir. 2006) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins.*

*Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).

The Court has subject matter jurisdiction over Choon's Design's claims in this patent and trademark infringement case against online sellers from China pursuant to 28 U.S.C. §§ 1331 (conferring federal question jurisdiction over actions arising under federal law), 1332(a)(2) (conferring diversity jurisdiction over actions between U.S. citizens and foreign citizens), and 1338(a) (conferring jurisdiction over actions arising under Acts of Congress relating to patents and trademarks), and 15 U.S.C. § 1121(a) (conferring jurisdiction over actions arising under the Lanham Act).

Furthermore, the Court has personal jurisdiction over the Defaulted Defendants. As alleged by Choon's Design in the Complaint, all Defendants operate fully interactive ecommerce stores, through which they have reached out to offer, sold, and shipped the accused mini-loom kits to Michigan customers, including customers in the Eastern District of Michigan:

> Defendants are subject to personal jurisdiction in this Court since each of the Defendants directly target business activities toward consumers in the United States, including Michigan through at least the fully interactive, ecommerce stores hosted on ecommerce sites. Furthermore, upon information and belief, this Court has personal jurisdiction over Defendants because they have committed acts giving rise to Plaintiff's claims within and directed to this judicial district. For instance, Defendants have sold and shipped

20

infringing products to customers located in this judicial district.

ECF No. 1, PageID.4.

## V.    SUFFICIENCY OF THE COMPLAINT

In its Motion, Choon's Design requests entry of a default judgment against the Defaulted Defendants under Federal Rule of Civil Procedure 55(b)(2). In determining whether to enter a default judgment, the Court must consider whether the allegations in the Complaint are sufficient to establish liability on Choon's Design's claims. As separate grounds for default judgment, Choon's Design argues that the Complaint establishes both its patent infringement claims and its Lanham Act claims. With respect to its patent infringement claims, Choon's Design argues that the Complaint establishes that the Defaulted Defendants directly infringe at least Claim 4 of the '631 Patent and Claim 1 of the '317 Patent. With respect to its Lanham Act claims, Choon's Design argues that the Complaint establishes that the Defaulted Defendants: (1) infringe the registered RAINBOW LOOM mark; and (2) unfairly compete on Amazon through the manner in which Amazon produces search results.

The Court has previously set forth an extensive analysis of Choon's Design's allegations in this case. In the Ex Parte Order, in determining whether to issue the temporary restraining order, the Court considered whether Choon's Design had a strong likelihood of success on the merits. The Court found that Choon's Design had a strong likelihood of success on the merits of its patent infringement claims, but did

not have a strong likelihood of success on the merits of its Lanham Act claims. As explained below, in accordance with its previous analysis, the Court finds that Choon's Design is entitled to default judgment on its patent infringement claims, but is not entitled to default judgment on its Lanham Act claims.

### A.    Patent Infringement Claims

Under the Patent Act, a patent grants the patentee the right to exclude others from practicing the patented invention. 35 U.S.C. § 154(a)(1). Thus, Section 271(a) of the Patent Act, the provision on direct infringement, provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." *Id.* § 271(a). *See also id.* § 271(b)-(c) (codifying theories of liability for induced infringement and contributory infringement). "A patent is infringed if any claim is infringed, for each claim is a separate statement of the patented invention." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995) (citation omitted).

For the same reasons, set forth in the Ex Parte Order, that it previously found that Choon's Design had a strong likelihood of success on the merits, the Court finds that the Complaint establishes liability on Choon's Design's patent infringement claims. *See* ECF No. 16, PageID.623-629. "Consistent with Choon's Design's infringement allegations," the Court concluded, "a reasonable jury applying the

commonly understood meanings of the claim terms would likely find that the accused mini-loom infringes the asserted claims." *Id.* PageID.628. Accordingly, the Court will **GRANT** Choon's Design's Motion as to its request for entry of a default judgment on its patent infringement claims.

### B. Lanham Act Claims

The Lanham Act is intended "to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce" and "to protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127. The Lanham Act provides for the registration of trademarks, which it defines to include "any word, name, symbol, or device, or any combination thereof … used by a person … to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *Id.* Choon's Design asserts its Lanham Act claims under Sections 32 and 43(a), which both impose civil liability on a defendant who uses a trademark in a manner that is "likely to cause confusion, or to cause mistake, or to deceive." *Id.* §§ 1114(1)(a), 1125(a)(1)(A).

The Supreme Court has observed that "Section 43(a) 'prohibits a broader range of practices than does § 32,' which applies to registered marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (quoting *Inwood Lab'ys, Inc. v.*

*Ives Lab'ys, Inc.*, 456 U.S. 844, 858 (1982)). To establish a claim for trademark infringement for a registered trademark, a plaintiff must show that: (1) it owns the registered trademark; (2) the defendant used the trademark in commerce; and (3) the use was likely to cause confusion. *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)). "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Explaining that "likelihood of confusion is the essence of an unfair competition claim," the Sixth Circuit has instructed that "the same [likelihood of confusion] factors are considered under section 1125(a) as are considered under section 1114." *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 604 (6th Cir. 1991). *See also Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("Under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks.").

Turning first to Choon's Design's trademark infringement claim, the Court finds that Choon's Design is not entitled to default judgment. Choon's Design alleges that Defendants infringe under Section 32 of the Lanham Act by using marks that cause a likelihood of confusion with the registered RAINBOW LOOM mark.

The '893 Registration for the RAINBOW LOOM mark grants Choon's Design trademark rights in the words "Rainbow Loom" displayed in gradating rainbow colors. In its Motion, Choon's Design cites an allegation that each Defendant uses a "colorable imitation" of the registered RAINBOW LOOM mark, ECF No. 1, PageID.28-29, to argue that the Complaint sufficiently pleads that all Defendants use "confusingly similar" marks, ECF No. 53, PageID.1096.

The Court finds that the Complaint does not establish liability on Choon's Design's trademark infringement claim for two reasons. First, Choon's Design's infringement allegations are not entitled to the assumption of truth. In asserting its trademark infringement claim, Choon's Design does not identify any specific allegedly infringing marks used by the Defaulted Defendants. Instead, Choon's Design alleges that unidentified marks used by unspecified Defendants are "confusingly similar" "colorable imitations" of the registered RAINBOW LOOM mark. Choon's Design's infringement allegations are "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a trademark infringement claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quotation omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "As such, the allegations are conclusory and not entitled to be assumed true." *Id.* Second, and perhaps reflecting the lack of an attempt to apply the likelihood of confusion factors, Choon's Design's infringement allegations are contradicted by the evidence of

record. As the Court noted in the Ex Parte Order, "Choon's Design does not identify any Defendants who use the words 'Rainbow Loom' as a source identifier for the accused mini-loom kits," and, in fact, Exhibit 1 to the Complaint shows that "Defendants operate Amazon stores with names such as 'AYSum Life,' 'RiguiUS,' and 'Yi Tong LLC,' and sell the accused mini-loom kits under brands such as 'AYSUM,' 'Sbnnfikeb,' and 'XYTLAX.'" ECF No. 16, PageID.618 (citing ECF No. 1-2, PageID.39, 44, 46).

In addition to its trademark infringement claim, the Court finds that Choon's Design is not entitled to default judgment on its unfair competition claim. Choon's Design alleges that Defendants unfairly compete in violation of Section 43(a) of Lanham Act by creating a false appearance of an association with the Rainbow Loom® brand. In its Motion, Choon's Design cites an allegation directed to the manner in which Amazon produces search results. Choon's Design alleges that Defendants advertise and sell the accused mini-loom kits in a way that "causes confusion" because a search for "Rainbow Loom" on Amazon produces a search results page that includes interspersed listings for both Rainbow Loom products and the accused mini-loom kits. ECF No. 53, PageID.1096-1097 (citing ECF No. 1, PageID.32).

The Court finds that the Complaint does not establish liability on Choon's Design's unfair competition claim for the same reasons, set forth in the Ex Parte

Order, that it previously found that Choon's Design did not have a strong likelihood of success on the merits. *See* ECF No. 16, PageID.639- 643. The Court noted that then, as now, "Choon's Design does not discuss any particular details of the search results page." *Id.*, PageID.641. After doing so itself, the Court concluded that "an Amazon customer presented with the search results page, complete with the 'Shop Rainbow Loom – Original DIY Art Craft Bracelet' banner ad and the 'Brands' filter whose first checkbox is for the 'Rainbow Loom' brand, would not, upon further scrolling, be reasonably confused that brands such as 'Sbnnfikeb' and 'XYTLAX' are associated with the Rainbow Loom® brand." *Id.*, PageID.643 (citing ECF No. 1-10, PageID.118, 123, 125).

In summary, the Court finds that Choon's Design is not entitled to default judgment on its Lanham Act claims. With respect to Choon's Design's trademark infringement claim, the Complaint does not establish that the Defaulted Defendants infringe the registered RAINBOW LOOM mark, at least because Choon's Design does not identify any specific allegedly infringing marks used by the Defaulted Defendants. With respect to Choon's Design's unfair competition claim, the Complaint does not establish that the Defaulted Defendants unfairly compete on Amazon through the manner in which Amazon produces search results, including for the reason that listings for the accused mini-loom kits are specified as being sold under entirely different brands than the Rainbow Loom® brand. Accordingly, the

27

Court will **DENY** Choon's Design's Motion as to its request for entry of a default judgment on its Lanham Act claims.

## VI. DAMAGES

In its Motion, Choon's Design requests an award of damages on both its patent infringement claims under Section 284 of the Patent Act, 35 U.S.C. § 284 and its Lanham Act claims under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). To summarize the requested damages award, Choon's Design seeks: (1) 40% of each Defaulted Defendant's revenues; and (2) $5,000.00 per Defaulted Defendant.[7]

### A. Overview

With respect to the 40% amount (i.e., 40% of each Defaulted Defendant's revenues), Choon's Design seeks three categories of damages against all Defaulted Defendants. For all three categories of damages, Choon's Design proposes the same damages calculation, clarifying that it is not proposing that any of the categories be double counted. On its patent infringement claims, Choon's Design requests the 40% amount as lost profits (more fully described as actual damages measured by the patentee's lost profits), or, in the alternative to lost profits, as a reasonable royalty.

---

[7] Choon's Design also makes a one-sentence request for a trebling of damages against the Defaulted Defendants who "appear to be continuing to sell the Infringing Products as identified on Ex. 1." ECF No. 53, PageID.1104 (citing ECF No. 53-1). Choon's Design does not, in the cited exhibit or elsewhere, identify any Defaulted Defendants who still sell the accused mini-loom kits. Accordingly, the Court will **DENY** Choon's Design's Motion as to its request for a trebling of damages.

On its Lanham Act claims, Choon's Design requests the 40% amount as an accounting of profits (more fully described as an equitable accounting (or disgorgement) of the defendant's profits).

In support of its request for an award of damages, Choon's Design submits four primary pieces of damages evidence: (1) a declaration from Choon's Design's president Cheong Choon Ng; (2) sales data that Choon's Design obtained from Amazon through expedited third-party discovery; (3) a spreadsheet calculating Choon's Design's profit margin; and (4) Choon's Design's proposed damages calculation, broken down for each Defaulted Defendant).

In his declaration, Ng explains that the Amazon sales data reports sales of the accused mini-loom kits by all Defendants. ECF No. 53-2, PageID.1124 (Ng Decl. ¶ 23) (citing ECF No. 53-3). The profit margin spreadsheet shows that Choon's Design's net profit margin on sales of Rainbow Loom products is 41.56%, which Choon's Design rounds down to 40% for purposes of the proposed damages calculation. *Id.* (Ng Decl. ¶ 24) (citing ECF No. 53-4). In connection with these underlying exhibits, the proposed damages calculation shows, *inter alia*, each Defaulted Defendant's revenues, as reported by Amazon via the sales data, and 40% of each Defaulted Defendant's revenues, as requested by Choon's Design. ECF No. 53-2, PageID.1124, 1126 (Ng Decl. ¶¶ 24, 31) (citing ECF No. 53-1).

Generally, in accordance with the available damages evidence, Choon's Design uses two sources of data for the inputs to the proposed damages calculation. First, to establish the baseline for a damages calculation (here, revenues on sales), Choon's Design uses data for sales of the accused mini-loom kits. Depending on the category of damages, Choon's Design relies on the data to either prove each Defaulted Defendant's revenues or estimate Choon's Design's lost revenues. Second, to establish the percentage to be applied (here, a 40% profit margin) to arrive at the final amount, Choon's Design uses data for sales of Rainbow Loom products, which it then relies on to both prove Choon's Design's profit margin and estimate each Defaulted Defendant's profit margin.

With respect to the $5,000.00 amount (i.e., $5,000.00 per Defaulted Defendant), on its Lanham Act claims only, Choon's Design seeks the same amount against each Defaulted Defendant as compensation for "other" damages, including corrective advertising. The "other" damages relate to the ongoing costs Choon's Design has incurred to track infringement and advertise Rainbow Loom products, including corrective advertising to distinguish them from the accused mini-loom kits. Explaining that it spent a total of $1,315,801.10 over the 2022-2024 time period, Choon's Design requests "at least" $5,000.00 per Defaulted Defendant, in order to "apportion" "some of these damages" against the Defaulted Defendants "and possibly other infringers." ECF No. 53, PageID.1103-1104.

### B.   Patent Damages

The Court will begin its analysis of Choon's Design's request for an award of damages by addressing the categories of damages Choon's Design seeks in the patent context. "In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated." *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990). In cases where the patentee has established a claim of infringement, Section 284 of the Patent Act provides that district courts "shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. The Supreme Court has held that damages are compensatory and measured by the patentee's loss rather than the infringer's gain. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964). The statutory mandate for district courts to award damages "adequate" to compensate for infringement is designed to ensure that the patentee will receive "full compensation" for "any damages" suffered as a result of infringement. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654-55 (1983). To the extent the patentee cannot prove actual damages, Section 284 sets the floor for a damages award at no less than a reasonable royalty. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989).

"Damages is the amount of loss to a patentee." *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). For actual damages, this is a "but for" inquiry. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*) (citing *Aro*, 377 U.S. at 507). Actual damages are generally determined based on the profits on sales that the patentee lost to the infringer because of the infringement. *Id.* To prove entitlement to actual damages in the form of lost profits, the patentee must show that there was a reasonable probability that, but for the infringement, the patentee would have made the infringing sales. *Id.* "The 'but for' inquiry therefore requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what the patentee would have made." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) (quotation and alteration omitted).

A reasonable royalty may be based on an established royalty or a hypothetical negotiation analysis. *Rite-Hite*, 56 F.3d at 1554. In the absence of an established royalty, a reasonable royalty is based on the result of a hypothetical negotiation between the patentee and the infringer at the time when the infringement began. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868-69 (Fed. Cir. 2010). "An established royalty is usually the best measure of a 'reasonable' royalty for a given use of an invention because it removes the need to guess at the terms to which parties would hypothetically agree." *Monsanto Co. v. McFarling*, 488 F.3d 973, 978-79

(Fed. Cir. 2007) (collecting cases). "When a hypothetical negotiation would have yielded a running royalty, the classic way to determine the reasonable royalty amount is to multiply the royalty base, which represents the revenue generated by the infringement, by the royalty rate, which represents the percentage of revenue owed to the patentee." *WhitServe, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 27 (Fed. Cir. 2012).

### 1.   Lost Profits

The Court will now consider Choon's Design's request for an award of lost profits. As with other categories of damages (e.g., an equitable accounting of each Defaulted Defendant's profits), Choon's Design seeks 40% of each Defaulted Defendant's revenues as lost profits (i.e., actual damages measured by Choon's Design's lost profits). For the lost profits category of damages, when using revenues on lost sales to establish the baseline for a damages calculation, one would expect the patentee to prove its own lost revenues. Here, Choon's Design relies on each Defaulted Defendant's revenues to estimate Choon's Design's lost revenues. On the other hand, Choon's Design then, as one would expect, relies on Choon's Design's profit margin to establish the profit margin to be applied to arrive at the final amount of Choon's Design's lost profits.

The availability of lost profits is a question of law based on underlying factual findings. *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003).

To prove entitlement to lost profits, Choon's Design has the burden of proving "but for" causation between sales of the accused mini-loom kits by the Defaulted Defendants and Choon's Design's lost sales of the Rainbow Loom kits. *Rite-Hite*, 56 F.3d at 1545. In its Motion, Choon's Design applies the so-called *Panduit* test, which the Federal Circuit has adopted as "a useful, but non-exclusive" way to prove entitlement to lost profits. *Id.* To satisfy the *Panduit* test, the patentee must prove: "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Id.* (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)). Proving the *Panduit* factors permits the inference that, but for the infringement, the patentee would have made the infringing sales, and shifts the burden to the infringer to show that the inference is unreasonable for some or all of the lost sales. *Id.*

In light of the evidence of record, the Court finds that Choon's Design has met its burden of proving entitlement to lost profits. To prove that Choon's Design would have made the sales made by the Defaulted Defendants pursuant to the first, second, and third *Panduit* factors, Choon's Design relies on the Ng Declaration. As to the first *Panduit* factor, demand for the Rainbow Loom kits, Ng explains that: "Choon's Design has had demand for its patented product in the relevant market such as through online retailer Amazon beginning more than ten years ago and continuing

to today." ECF No. 53-2, PageID.1125 (Ng Decl. ¶ 26). As to the second *Panduit*

factor, the absence of acceptable non-infringing substitutes, Ng explains that:

> There are no acceptable non-infringing alternatives to the patented product. Plaintiff's mini-loom design including a Y-shaped (or U-shaped) loom has been widely copied and is preferred over other looms due to its convenience and ease of use. While other looms exist, none are as convenient and easy to use as Plaintiff's mini-loom. Further, the claims of the '631 and '317 Patents are not limited to the Y-loom design being sold by the Defaulted Defendants. The '631 and '317 Patents protect against acceptable non-infringing alternatives.

*Id.*, PageID.1125 (Ng Decl. ¶ 27). As to the third *Panduit* factor, manufacturing and

marketing capability to exploit the demand for the Rainbow Loom kits, Ng explains

that:

> Choon's Design had the manufacturing and marketing capacity to sell the products that were sold by the Defaulted Defendants. Due to the relative ease of manufacture and easily available importation of Plaintiff's Rainbow Loom products, it is relatively easy for Choon's Design to scale its product offerings to meet virtually any demand.

*Id.*, PageID.1125 (Ng Decl. ¶ 28).

Additionally, the Court finds that Choon's Design has met its burden of

proving the amount of lost profits. To prove the amount of profits Choon's Design

would have made pursuant to the fourth *Panduit* factor, Choon's Design further

relies on the proposed damages calculation, as supported by the underlying Amazon

sales data and profit margin spreadsheet. As Ng explains, the proposed damages

calculation is "based on multiplying the sales of the Infringing Products by 40%" because "40% represents the profit margin Choon's Design would have made if it had sold the products instead of Defendants selling the Infringing Products." *Id.*, PageID.1124 (Ng Decl. ¶ 24). While the expected baseline for a damages calculation would be Choon's Design's lost revenues, the accused mini-loom kits are essentially generic versions of the Rainbow Loom kits. Given the similarity between the competing products, and in accordance with the available damages evidence, the Court finds that Choon's Design reasonably relies on each Defaulted Defendant's proven revenues to estimate Choon's Design's lost revenues. If anything, the use of revenues on sales of the lower priced generic versions underestimates the true extent of revenues that Choon's Design would have made on lost sales of the Rainbow Loom kits.

Because Choon's Design has proven both entitlement to lost profits and the amount of lost profits, the Court finds that Choon's Design is entitled to the requested damages award. As a reasonable estimate of Choon's Design's lost revenues, the evidence of record supports the use of each Defaulted Defendant's proven revenues to establish the baseline for a damages calculation. As well, the evidence of record supports the use of Choon's Design's proven profit margin to establish 40% as the profit margin to be applied to arrive at the final amount of Choon's Design's lost profits. Accordingly, the Court will **GRANT** Choon's

Design's Motion as to its request for 40% of each Defaulted Defendant's revenues as lost profits on its patent infringement claims.

### 2.    Reasonable Royalty

The Court will next consider Choon's Design's request for an award of a reasonable royalty. Because Choon's Design has established its patent infringement claims, Section 284 of the Patent Act entitles Choon's Design to a reasonable royalty on each Defaulted Defendant's sales of the accused mini-loom kits. "The statute guarantees patentees a reasonable royalty even when they are unable to prove entitlement to lost profits or an established royalty rate." *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). The Federal Circuit has adopted the *Georgia-Pacific* factors as a "comprehensive (but unprioritized and often overlapping) list of relevant factors" for a reasonable royalty determination. *ResQNet.com*, 594 F.3d at 869 (citing *Ga.-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). The Federal Circuit has instructed that Section 284 "requires the district court to award damages 'in an amount no less than a reasonable royalty' even if [the patentee] has no evidence to proffer." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (quoting *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003)). Even after rejecting the damages theories offered by the patentee, district courts must consider the *Georgia-*

*Pacific* factors and award whatever reasonable royalty the record will support. *Dow Chem.*, 341 F.3d at 1382 & n.4.

Here, as a reasonable royalty on sales of the accused mini-loom kits, Choon's Design seeks 40% of each Defaulted Defendant's revenues. For the reasonable royalty category of damages, Choon's Design relies on its licensing history to demonstrate that the Defaulted Defendants would have agreed to pay a 40% royalty on sales of the accused mini-loom kits. In his declaration, Ng describes that a 2013 licensing agreement, which granted the right to make and sell loom-related products covered by different patents, required the licensee to pay a 50% royalty on profits. ECF No. 53-2, PageID.1126 (Ng Decl. ¶ 29). Furthermore, Ng describes that recent settlement agreements have granted the right to make and sell products covered by the '631 Patent and related patents. *Id.* (Ng Decl. ¶ 30). Based on Choon's Design's licensing history, Ng explains that "if we were to negotiate a reasonable royalty," then "we would request and believe we should receive at least 40%." *Id.*

In light of the evidence of record, the Court finds that Choon's Design is entitled to a 16% royalty on sales of the accused mini-loom kits, as applied to Choon's Design's selected baseline of each Defaulted Defendant's revenues. As explained below, the 40% royalty rate in Choon's Design's proposed damages calculation requires modification to 16% to account for the baseline being revenues rather than profits on sales.

Based on Choon's Design's licensing history, the evidence of record supports the use of a 40% royalty rate. The question is, 40% of what? It cannot be, as Choon's Design requests, 40% of each Defaulted Defendant's revenues, as that measures 100% of each Defaulted Defendant's profits. This is because, for other categories of damages, and particularly an equitable accounting of each Defaulted Defendant's profits, Choon's Design relies on its own 40% profit margin to estimate each Defaulted Defendant's profit margin. Saying that Choon's Design seeks 40% of each Defaulted Defendant's revenues is just another way of saying that Choon's Design seeks 100% of each Defaulted Defendant's profits.

As opposed to such an objectively unreasonable royalty, the evidence of record supports the use of a 40% royalty rate, but applied to each Defaulted Defendant's profits, not revenues, on sales of the accused mini-loom kits. For instance, as described by Ng when explaining what the Defaulted Defendants would have agreed to pay, the 2013 licensing agreement provided for "a royalty rate of 50% of the profit (Net Sales minus agreed upon costs) derived from sales of products under the agreement." Id. (Ng Decl. ¶ 29). So, before applying a 40% royalty rate, one has to go back and establish each Defaulted Defendant's profits. For this purpose, the Court finds that Choon's Design reasonably relies on Choon's Design's proven 40% profit margin as a reasonable estimate of each Defaulted Defendant's profit margin to be applied to each Defaulted Defendant's proven revenues.

In sum, when using revenues to establish the baseline, and in accordance with the available damages evidence, the correct reasonable royalty calculation is not:

revenues * 40% royalty rate = final amount,

because that measures 100% of profits. Instead, the correct reasonable royalty calculation is:

(a) revenues * 40% profit margin = profits, and then

(b) profits * 40% royalty rate = final amount,

meaning that the effective royalty rate to be applied to arrive at the final amount of a reasonably royalty on sales of the accused mini-loom kits would be 16%, not 40%. Accordingly, the Court will **GRANT** Choon's Design's Motion as to its request (as modified by the Court) for 16% of each Defaulted Defendant's revenues as a reasonable royalty on its patent infringement claims.

### C.  Lanham Act Damages

Lastly, the Court will address the categories of damages Choon's Design seeks on its Lanham Act claims. As with other categories of damages (e.g., actual damages measured by Choon's Design's lost profits), Choon's Design seeks 40% of each Defaulted Defendant's revenues as an equitable accounting of each Defaulted Defendant's profits. Additionally, Choon's Design requests $5,000.00 per Defaulted Defendant as compensation for "other" damages, including corrective advertising.

The Court need not address these categories of damages in detail. Having found that Choon's Design is not entitled to default judgment on its Lanham Act claims, the Court finds that Choon's Design is not entitled to the requested damages award. Accordingly, the Court will **DENY** Choon's Design's Motion as to its request for 40% of each Defaulted Defendant's revenues as an accounting of profits on its Lanham Act claims. Likewise, the Court will **DENY** Choon's Design's Motion as to its request for $5,000.00 per Defaulted Defendant as compensation for "other" damages on its Lanham Act claims.

## VII.   PERMANENT INJUNCTION

In its Motion, Choon's Design requests a permanent injunction on both its patent infringement claims under Section 283 of the Patent Act, 35 U.S.C. § 283 and its Lanham Act claims under Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a). As set forth above, the Court finds that Choon's Design is entitled to default judgment on its patent infringement claims, but is not entitled to default judgment on its Lanham Act claims. Accordingly, the Court will limit its analysis of Choon's Design's request for a permanent injunction to the patent context.

Section 283 of the Patent Act provides that district courts adjudicating patent cases "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "According to well-established principles of equity, a

plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.*

Below, the Court will consider and balance the four factors that a district court must consider in determining whether to issue a permanent injunction in light of the current record, and determine whether the factors support the issuance of a permanent injunction in this case.

### A.    Irreparable Injury

The first factor that the Court must consider in determining whether to issue a permanent injunction is whether Choon's Design would suffer irreparable injury in the absence of a permanent injunction. The Federal Circuit has held that a patentee seeking injunctive relief is not entitled to a presumption of irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("We take this opportunity to put the question to rest and confirm that *eBay* jettisoned the

presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief.") (citing *eBay*, 547 U.S. at 393). But "even though a successful patent infringement plaintiff can no longer rely on presumptions or other short-cuts to support a request for a permanent injunction," the Federal Circuit has instructed that "it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude." *Id.*

Under Federal Circuit precedent, a finding of irreparable injury often follows from competition between the parties for sales of patented products and infringing products. "Where two companies are in competition against one another, the patentee suffers the harm — often irreparable — of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). "Irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales and erosion in reputation and brand distinction." *Id.* at 1344. For instance, the Federal Circuit has held that a patentee may demonstrate irreparable injury by showing direct competition between the parties, the patentee's loss in market share and access to potential customers, and the defendant's financial inability to satisfy a monetary award. *Robert Bosch*, 659 F.3d at 1151. Similarly, "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business

opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

In accordance with these principles, the Court finds that Choon's Design is suffering irreparable injury, particularly given the direct competition between the parties. Specifically, in connection with the lower prices and inferior quality of the accused mini-loom kits, Choon's Design has demonstrated that it is being irreparably injured through competitive and reputational harms, including at least price erosion and loss of goodwill. As Choon's Design points out, the Defaulted Defendants did not incur the development costs that Choon's Design incurred in creating the Rainbow Loom kits. The lack of development costs allows the Defaulted Defendants to sell the accused mini-loom kits at lower prices. The lower prices of the accused mini-loom kits not only erode the prices of the Rainbow Loom kits, but also have the potential to drive Choon's Design out of the marketplace. Moreover, the accused mini-loom kits are not manufactured in accordance with the quality standards that Choon's Design employs in manufacturing the Rainbow Loom kits. Coupled with ongoing confusion between the competing products,[8] the inferior quality of the accused mini-loom kits lowers the reputation of the Rainbow Loom kits, thus

---

[8] The accused mini-loom kits are essentially generic versions of the Rainbow Loom kits. Because Choon's Design does not identify any specific allegedly infringing marks used by the Defaulted Defendants, the Court presumes that confusion originates from the similarity between the competing products, not deceptive or confusing marks in the trademark context.

harming Choon's Design's goodwill in the marketplace. As the Federal Circuit has held, such competitive and reputational harms "are all valid grounds for finding irreparable harm." *Celsis In Vitro*, 664 F.3d at 930. Accordingly, the Court finds that the first factor of whether Choon's Design would suffer irreparable injury in the absence of a permanent injunction weighs in favor of issuance of a permanent injunction.

### B.    Adequacy of Legal Remedies

In connection with the irreparable injury Choon's Design would suffer in the absence of a permanent injunction, the second factor that the Court must consider in determining whether to issue a permanent injunction is whether remedies available at law, such as monetary damages, are inadequate to compensate Choon's Design. "The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money." *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). "The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (citing 35 U.S.C. § 154(a)(1)). "In view of that right, infringement may cause a patentee irreparable harm not remediable by a reasonable royalty." *Id.* "It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding

that monetary damages will always suffice to make the patentee whole." *Hybritech*, 849 F.2d at 1456-57.

The Court agrees with Choon's Design that legal remedies are inadequate to compensate Choon's Design for the harm to its competitive position and reputation. As with the irreparability of the injury, the inadequacy of legal remedies follows from the direct competition between the parties and the lower prices and inferior quality of the accused mini-loom kits. *Douglas Dynamics*, 717 F.3d at 1345 ("This record evidence underscores the profitability of infringement and suggests that mere damages will not compensate for a competitor's increasing share of the market, a market which [the patentee] competes in, and a market that [the patentee] has in part created with its investment in patented technology."); *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994) ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure."). Moreover, the Court agrees with Choon's Design that the inadequacy of legal remedies is reinforced by the fact that the Defaulted Defendants, by their refusal to appear, have prevented Choon's Design from discovering the full extent of damages it is entitled to recover. *Cf. Robert Bosch*, 659 F.3d at 1155-56 ("While competitive harms theoretically can be offset by monetary payments in certain circumstances, the likely availability of those

monetary payments helps define the circumstances in which this is so."). Accordingly, the Court finds that the second factor of whether remedies available at law, such as monetary damages, are inadequate to compensate Choon's Design weighs in favor of issuance of a permanent injunction.

### C.  Balance of Hardships

The third factor that the Court must consider in determining whether to issue a permanent injunction is whether the balance of hardships between Choon's Design and the Defaulted Defendants warrants a remedy in equity. In balancing the hardships between the parties, the Federal Circuit has instructed that the defendant cannot claim hardship in the harm to its business from discontinuing sales of an infringing product. *Robert Bosch*, 659 F.3d at 1156 ("A party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one.") (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.")).

Having found that Choon's Design has established its patent infringement claims, the Court agrees with Choon's Design that a permanent injunction would not cause substantial harm to the Defaulted Defendants. As Choon's Design points out, although the requested injunctive relief would prohibit the Defaulted Defendants

from continuing to sell the accused mini-loom kits, the Defaulted Defendants would only have to stop selling infringing products, which they have no legal right to do in the first place. Conversely, the Defaulted Defendants would remain free to conduct lawful business activities, including the development of a non-infringing design. As well, the Court agrees with Choon's Design that the hardship Choon's Design would face in the absence of a permanent injunction outweighs any harm to the Defaulted Defendants. Specifically, allowing the Defaulted Defendants to continue selling the accused mini-loom kits would diminish the value of Choon's Design's patent rights and continue the harm to its competitive position and reputation. Accordingly, the Court finds that the third factor of whether the balance of hardships between Choon's Design and the Defaulted Defendants warrants a remedy in equity weighs in favor of issuance of a permanent injunction.

### D.    Public Interest

The fourth factor that the Court must consider in determining whether to issue a permanent injunction is whether the public interest would be served by a permanent injunction. The Federal Circuit has explained that "the touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010), *aff'd on other grounds*, 564 U.S. 91 (2011). Generally, in cases

48

"absent any other relevant concerns," the Federal Circuit has instructed that "the public is best served by enforcing patents that are likely valid and infringed." *Abbott Lab'ys v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).

The Court finds that the public interest would be served by issuing a permanent injunction. As Choon's Design points out, a permanent injunction would benefit the public interest by protecting Choon's Design's patent rights. On the other hand, a permanent injunction would not disserve the public interest because consumers would not be deprived of the benefits of the patented invention. Although the requested injunctive relief would prohibit the Defaulted Defendants from continuing to sell the accused mini-loom kits, Choon's Design will still sell the Rainbow Loom kits. Accordingly, the Court finds that the fourth factor of whether the public interest would be served by a permanent injunction weighs in favor of issuance of a permanent injunction.

### E.    Balancing and Conclusion

Because Choon's Design is being irreparably injured through at least price erosion and loss of goodwill, and legal remedies are inadequate to compensate Choon's Design for the harm to its competitive position and reputation, the Court finds that the first factor and the second factor weigh in favor of issuance of a permanent injunction. Furthermore, because a permanent injunction would not cause substantial harm to the Defaulted Defendants, and the hardship Choon's Design

would face in the absence of a permanent injunction outweighs any harm to the Defaulted Defendants, the Court finds that the third factor weighs in favor of issuance of a permanent injunction. As well, because a permanent injunction would benefit the public interest by protecting Choon's Design's patent rights, and would not disserve the public interest because consumers would not be deprived of the benefits of the patented invention, the Court finds that the fourth factor weighs in favor of issuance of a permanent injunction.

After considering and balancing the factors in light of the current record, the Court determines that the factors support the issuance of a permanent injunction in this case. Accordingly, the Court will **GRANT** Choon's Design's motion as to its request for a permanent injunction.

## VIII. ADDITIONAL REQUESTS

To conclude its ruling on Choon's Design Motion for default judgment, the Court will address three requests that Choon's Design makes in addition to its requests for an award of damages and a permanent injunction.

### A.    Asset Transfer

First, Choon's Design requests an order of asset transfer, asking the Court to "award the amount restrained for each of the Defaulted Defendants, if any amount remains restrained by Amazon." ECF No. 53, PageID.1104. The Court has previously denied the same (and similarly unsupported) request in a companion case

as contrary to the procedure for issuing writs of execution enforcing money judgments. Specifically, the Court denied Choon's Design's request for an order of asset transfer "in the judgment itself" because it would amount to issuance of a writ of execution without notice to the judgment debtor. *See Choon's Design LLC v. 864Shop*, No. 4:22-cv-12963, 2024 U.S. Dist. LEXIS 191122, at *24 n.1 (E.D. Mich. Aug. 23, 2024) (Behm, J.) (citing *Mattel, Inc. v. Arming*, No. 18-cv-8824, 2021 U.S. Dist. LEXIS 156994, at *24 (S.D.N.Y. Aug. 18, 2021) (denying request for an asset transfer order because plaintiff failed to show proper notice to judgment debtor as required by New York law)).

In concluding that the governing law contemplates notice to the judgment debtor, the Court cited Federal Rule of Civil Procedure 69(a) and Michigan Court Rule 3.101(E). *Id.* Rule 69(a) provides that, in the absence of an applicable federal statute, the procedure on execution "must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). And pursuant to MCR 3.101(E), a writ of garnishment "shall inform the defendant that unless the defendant files objections within 14 days after the service of the writ on the defendant ... without further notice the property or debt held under the garnishment may be applied to the satisfaction of the plaintiff's judgment." Mich. Ct. Rule 3.101(E)(5)(a). Accordingly, in the absence of any authority to the contrary, the Court will **DENY**

Choon's Design's Motion as to its request for an order of asset transfer in the judgment itself.

### B.    Alternative Service

Second, Choon's Design requests an order continuing to allow alternative service pursuant to Federal Rule of Civil Procedure 4(f). Specifically, Choon's Design requests an order allowing Choon's Design to continue serving the Defaulted Defendants and associated third parties by email. In the Ex Parte Order, the Court granted the same request on Choon's Design's motion for expedited discovery and alternative service of process. For the same reasons that Choon's Design cited and the Court set forth in the Ex Parte Order, the Court finds that the circumstances of this case are appropriate for allowing Choon's Design to continue serving the Defaulted Defendants and associated third parties by email. *See* ECF No. 8; ECF No. 16, PageID.653-655. Accordingly, the Court will **GRANT** Choon's Design's Motion as to its request for an order continuing to allow alternative service.

### C.    Security Bond

Third, referring to the bond that the Court required Choon's Design to deposit pursuant to Federal Rule of Civil Procedure 65(c) to secure the temporary restraining order, Choon's Design requests an order releasing its bond. Because the temporary restraining order is long expired and all Defendants in this case have been either

terminated or defaulted, the Court will **GRANT** Choon's Design's Motion as to its request for an order releasing its bond.

## IX.    CONCLUSION

For the reasons stated in this opinion and order, the Court **GRANTS IN PART** and **DENIES IN PART** Choon's Design's Motion for default judgment (ECF No. 53). This opinion and order is not a final order and does not close this case. A separate final judgment will follow outlining the specific relief granted. Within seven (7) days of this opinion and order, Choon's Design **SHALL SUBMIT** (but not file on the docket) a proposed final judgment via the Utilities section of ECF consistent with this opinion and order containing its proposed terms.

    **SO ORDERED.**

Date: January 30, 2026                    s/F. Kay Behm
                                          F. Kay Behm
                                          United States District Judge